04cv18912b-DoctRulings.wpd

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **CHARLES RUTH, III,** : | |
| : | Case No. 1:04-CV-18912 |
| **Plaintiff,** : | |
| : | JUDGE O'MALLEY |
| v. : | |
| : | MEMORANDUM AND ORDER |
| **A.O. SMITH CORP., et al.,** : | |
| : | |
| **Defendants** : | |

Hobart and ESAB, who are the only remaining defendants in this case, have moved to exclude from evidence a number of documents. On August 10, 2005, the Court heard arguments from the parties on each document; after substantial analysis and particularized review, the Court now issues its rulings on admissibility. The attached chart shows whether the defendants' motion to exclude is sustained (document will be excluded at trial) or overruled (document will be admitted at trial) for each document.

The Court adds this brief explanation of its reasoning. In order to be adduced at trial, each document must be both relevant, under Fed. R. Evid. 401, and also otherwise admissible, under all of the Rules of Evidence. In determining relevance, the Court assessed whether each document tended to establish any fact that was "of consequence to the determination of the action." Fed. R. Evid. 401. The Court concluded that many of the documents were relevant because they tended to establish facts consequent to the following arguments made by the parties:

- Defendants have asserted that the manganese contained in welding fumes cannot cause neurological injury to welders. Accordingly, documents tending to show that one of the defendants believed that manganese in welding fumes can cause neurological injury to welders are relevant. Furthermore, for reasons discussed below, documents revealing that *other* industry participants believed that welding fumes can cause neurological injury to welders are also relevant, even if those participants are no longer (or never were) defendants in this particular case.

- Defendants have asserted that industry standards relating to manganese in welding fumes – both as to the amount of manganese in welding fumes and as to warning language – issued by the Occupational Safety and Health Administration ("OSHA"), the American National Standards Institute ("ANSI"), and other organizations are relevant, because: (1) defendants' adherence to those standards suggests non-negligence and also lack of bad mens rea; and (2) comparison of the industry standards to the Navy's Military Specifications demonstrates that the government exercised discretion when ordering welding rods (which is relevant to the government contractor defense). Accordingly, documents tending to show involvement by industry participants in setting or manipulating those industry standards are relevant.

- Defendants have asserted that Ruth's employer ("Ingalls") was a "learned intermediary," because Ingalls received full knowledge of the risks of manganese in welding fumes; defendants further assert that Ingalls had a responsibility to inform its employees, including Ruth, of those risks. Accordingly, documents tending to show that employers may have received less information than was available to the manufacturing defendants, or received misleading information, is relevant to Ingalls' status as a learned intermediary.

- Plaintiffs have asserted they will ultimately establish a right to punitive damages. Under

Mississippi law, punitive damages "may not be awarded if the claimant does not prove by clear and convincing evidence that *the defendant against whom punitive damages are sought* acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud." Miss. Code Ann. §11-1-65(1)(a) (emphasis added). Accordingly, documents that tend to show one of the defendants in this case acted with the requisite mens rea are relevant.[1]

In addition to assessing relevance, the Court also determined whether the documents were otherwise admissible. The Court's determinations took into account the following rules of evidence, among others:

- whether statements contained in a document were hearsay exceptions by virtue of Fed. R. Evid. 803(16), referring to statements contained in ancient documents.[2]

- whether statements contained in a document were hearsay exceptions by virtue of Fed. R. Evid.

---

[1] Of import on this point, as well as others, is the Court's conclusion that plaintiffs have not carried their burden of showing that Airco is a predecessor to, or otherwise sufficiently related to, defendant ESAB. Thus, the Court concludes that the "Airco documents" are not admissible as admissions; they are only admissible under some other theory that overcomes defendants' hearsay objections.

[2] The parties argued whether *all* hearsay statements contained in ancient documents were admissible under Rule 803(16). This question implicates Rule 805, which provides: "Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules." The answer is that not all statements contained in an ancient document are automatically admissible: "Courts that have dealt with the issue of hearsay statements within ancient documents that are brought in by Fed. R. Evid. 803(16) have concluded that the hearsay within hearsay problem persists, and that excluding parts of such documents because of double hearsay is an appropriate application of Rule 805." *Columbia First Bank, FSB v. U.S.*, 58 Fed. Cl. 333, (Fed. Ct. Cl. 2003) (citing several cases, including *United States v. Demjanjuk*, 2002 WL 544622 at *23 (N.D. Ohio Feb.21, 2002), *affirmed*, 367 F.3d 623, (6th Cir. 2004)). *See United States v. Stelmokas*, 1995 WL 464264 at *6 (E.D. Pa. Aug. 2, 1995) ("[T]he Court interprets Rule 803(16) as an exception to the hearsay rule only for statements where the declarant is the author of the ancient document. This ruling best gives effect to the combined purposes of Rules 803(16) and 805.")

803(6), referring to records of regularly conducted business activity.

- whether statements contained in a document were offered for non-hearsay purposes – that is, other than "to prove the truth of the matter asserted," Fed. R. Evid. 801(c) – such as: (1) to show industry involvement in the development of governmental and other standards; (2) to show the state of industry knowledge regarding the risks of manganese in welding fume, (3) to show the state of industry knowledge regarding the efficacy of existing warnings and historical warnings; or (4) to show the state of industry knowledge regarding its own transmission of relevant knowledge to learned intermediaries.

- whether statements contained in a document had a degree of probative value that substantially outweighed any prejudicial value, pursuant to Fed. R. Evid. 403.

The Court also notes that, when reviewing the documents for relevance and admissibility – especially documents authored by industry participants who are not now (or never were) defendants in this case – the Court was guided by several other cases, including: *Gonzalez v. Digital Equipment Corp.*, 8 F.Supp.2d 194 (E.D.N.Y. 1998); *Dartez v. Fibreboard Corp*, 765 F.2d 456 (5th Cir. 1985); and *Borel v. Fiberboard Paper Prods. Corp.*, 493 F.2d 1076 (6th Cir. 1973).  Generally, these cases explain that documents produced by non-party manufacturers may be relevant in a case against a defendant manufacturer in the same industry, even if the documents are purely internal materials.  The reason is that these documents may support an inference that, given the state of the art, defendant-members of the industry had, or should have had (given their duty to have the knowledge and skill of an expert), the same "state of mind" with respect to possible damage to users of their product, and/or the adequacy of warnings in connection with such dangers.

In other words, evidence regarding a *non-party* manufacturer's knowledge of: (a) risks posed by

its product, (b) the efficacy of its warnings, and (c) the level of knowledge of learned intermediaries, may be relevant to the *defendant* manufacturer's knowledge on those issues, as well. On the other hand, an internal document of a non-party that does not add anything of evidentiary value regarding the state of industry knowledge, and is relevant only to internal thought processes or individual "bad intentions," generally will not be admissible.[3]

Application of these standards yields the rulings shown in the attached chart. The Court adds, however, that these rulings apply only in this case; the admissibility of these same documents in a case with different defendants may not be the same.

**IT IS SO ORDERED.**

August 23, 2005                  /s/ Kathleen M. O'Malley
date                                    Kathleen McDonald O'Malley

---

[3] While plaintiffs argued that certain documents in this category were admissible under Fed. R. Evid. 801(d)(2)(E), because they contained statements made during the course and in furtherance of a conspiracy to hide the risks of neurological injury from manganese in welding fumes, the Court concluded that its ruling granting summary judgment to defendants on plaintiffs' conspiracy claim counseled against resort to this rule of evidence in making its admissibility determinations *in this particular case*.

| Doc. # in Notebook | Plaintiff's Trial Doc. # | Description | Ruling |
|---|---|---|---|
| 7 | 842 | (MetLife) Health Protection of Welders 1937 | Overruled (Admitted) |
| 25 | 470 | (MetLife) Jan. 3, 1938 McConnell to Reddie | Overruled (Admitted) |
| 27 | 471 | (MetLife) January 11, 1938 Met Life letter | Overruled (Admitted) |
| 26 | 472 | (MetLife) January 20, 1938 meeting minutes | Overruled (Admitted) |
| 30 | 475 | (MetLife) June 23, 1938 meeting minutes | Overruled (Admitted) |
| 28 | (multiple) | (MetLife) Health Protection in Welding 1938 | Overruled (Admitted) |
| 31 | (multiple) | (MetLife) Health Protection in Welding 1944 | Overruled (Admitted) |
| 9 | 1245 | (MetLife) Actual or Possible Hazards . . . | Overruled (Admitted) |
| 17 | 152 | (NEMA) June 13, 1972 meeting minutes | Overruled (Admitted) |
| 24 | 138 | (NEMA) March 16, 1937 meeting minutes | Overruled (Admitted) |
| 45 | 108 | (Airco) October 17, 1949 meeting minutes | Overruled (Admitted) |
| 33 | 125 | (NEMA) July 31, 1952 meeting minutes | Overruled (Admitted) |
| 50 | 500 | (NEMA) July 18, 1979 meeting minutes | Overruled (Admitted) |
| 61 | 1289 | (NEMA) September 22, 1980 meeting minutes | Overruled (Admitted) |
| 14 | 479 | (AWS) June 8, 1966 meeting minutes | Overruled (Admitted) |
| 21 | 492 | (AWS) March 19, 1979 meeting minutes | Overruled (Admitted) |
| 36 | 483 | (AWS) June 19, 1967 meeting minutes | Overruled (Admitted) |
| 37 | 483 | (AWS) Caution label to appear on filler metals | Overruled (Admitted) |
| 39 | 875 | (AWS) 3/16/79 Huntington Alloys re: AWS | Overruled (Admitted) |
| 41 | 504 | (AWS) 5/11-12/82 meeting minutes re: wire v. rods | Overruled (Admitted) |
| 42 | 506 | (AWS) June 5-6, 1984 meeting minutes | Overruled (Admitted) |
| 43 | 1237 | (AWS) AWS Safety & Health Fact Sheet | Overruled (Admitted) |
| 44 |  | (AWS) AWS Safety & Health Fact Sheet | Overruled (Admitted) |
| 49 | 36, 498 | (AWS) June 8, 1979 meeting minutes | Overruled (Admitted) |
| 58 | 150 | (AWS) 2/18/72 letter re: AWS meeting minutes | Overruled (Admitted) |
| 68 |  | (AWS) June 23, 1999 meeting minutes | Overruled (Admitted) |
| 13 | 527 | (Lincoln) May 27, 1966 letter to Shutt | Overruled (Admitted) |
| 48 | 139 | (Lincoln) June 7, 1967 letter from Lincoln to AWS | Overruled (Admitted) |

| Doc. # in Notebook | Plaintiff's Trial Doc. # | Description | Ruling |
|---|---|---|---|
| 47 | 132 | (Lincoln) June 17, 1960 letter to Clipsom | **Sustained (Excluded)** |
| 53 | 530 | (Lincoln) December 2, 1975 Ken Brown letter | **Sustained (Excluded)** |
| 46 | 109 | (Airco) October 25, 1949 Airco memo | **Sustained in part; redact ¶¶5&6** |
| 12 | 114 | (Airco) 1950 Airco memo | **Sustained in part; redact last ¶** |
| 19 | 6 | (Airco) Lesnewich – "Only manganese" | Overruled (Admitted) |
| 35 | 582 | (Airco) "Keep it quiet for another 10 years" | **Sustained (Excluded)** |
| 22 | 552 | (Airco) March 4, 1980 Kotecki to DeLong | Overruled (Admitted) |
| 54 | 548 | (Airco) May 19, 1979 letter to AWS | Overruled (Admitted) |
| 6 | 1235 | (Pub.s) Poison Hazards in Industry | Overruled (Admitted) |
| 10 | 1229 | (Pub.s) Cranch article - Health Aspects of Welding | Overruled (Admitted) |
| 11 | 864 | (Pub.s) von Haam and Groom article | Overruled (Admitted) |
| 16 | 146 | (Pub.s) Battelle report | Overruled (Admitted) |
| 32 | 107 | (Pub.s) Welding & Cutting Fumes - Health & Welder | Overruled (Admitted) |
| 20 | 459 | (Pub.s) Effects of Welding on Health | Overruled (Admitted) |
| 34 | 571 | (Pub.s) Welding "Hazards" - mythology | Overruled (Admitted) |
| 38 |  | (Pub.s) Procedure Handbook of Arc Welding | Overruled (Admitted) |
| 40 | 570 | (Pub.s) Marv Kennebeck editorial | Overruled (Admitted) |
| 57 | 1295 | (LaFave) Lafave e-mail to AWS, ESAB, and others | Overruled (Admitted) |
| 8 | 133 | (Misc) Reference List for Health Hazards | Overruled (Admitted) |
| 18 | 318 | (Misc) June 22, 1972 Hobart letter | Overruled (Admitted) |
| 15 |  | (Misc) Ballot | Overruled (Admitted) |
| 55 | 179 | (Misc) 11/7/79 Alloy Rods (ESAB) letter | Overruled (Admitted) |
| 56 | 243 | (Misc) December 18, 1996 Alloy Rods (ESAB) letter | Overruled (Admitted) |
| 59 | 7 | (Misc) AWS Technical Comm. Scopes and Rules | Overruled (Admitted) |
| 60 |  | (Misc) Missions of the AWS | Overruled (Admitted) |