04cv18912e-ord(LHWCA).wpd

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **CHARLES RUTH, III,** | : | |
| | : | **Case No. 1:04-CV-18912** |
| **Plaintiff,** | : | |
| | : | **JUDGE O'MALLEY** |
| **v.** | : | |
| | : | **MEMORANDUM AND ORDER** |
| **A.O. SMITH CORP., et al.,** | : | |
| | : | |
| **Defendants** | : | |

The Court earlier issued a number of oral rulings on the record in this case,[1] with the promise that it would later issue one or more written memoranda confirming those rulings and, in some cases, providing additional explanation. Thereafter, the parties settled this case. The parties requested, however, that the Court issue the promised written rulings anyway, because the Court's oral rulings had implications for the entire MDL, as well as related actions filed in state court.

Accordingly, this is the third of three memoranda documenting the Court's earlier, oral rulings.[2] For the reasons and to the extent stated on the record earlier, and for the additional reasons stated below,[3] Ruth's motion to preclude allocation of fault to Ingalls Shipyard (*Ruth* docket nos.

---

[1] *See, e.g.*, hearing transcript at 42-142 (Aug. 8, 2005); hearing transcript at 33-64 (August 30, 2005). The Court issued rulings on motions pending in both this specific case, and also on motions aimed at all MDL cases pending on the master docket.

[2] The first two such written rulings may be found at *Ruth* docket nos. 180 & 183.

[3] To the extent the parties intend to rely on these rulings in other MDL cases, the Court notes that this opinion and the hearing transcripts of the Court's oral rulings should be read together; neither, alone, contain all of the reasons behind the Court's rulings.

105 & 115) is **GRANTED**.[4]

## I.

Plaintiff Ruth spent his welding career working at the Ingalls Shipyard in Mississippi. During Ruth's employment, Ingalls had in place a "Hazard Communications Program" (or "HazCom Program"), in order to convey to its workers the hazards of engaging in certain activities, such as welding. With docket no. 105, Ruth seeks to exclude any evidence suggesting that Ingalls, itself, had some fault in causing any harm that Ruth allegedly suffered. Thus, for example, Ruth seeks to exclude, as irrelevant, evidence tending to show that: (1) Ingalls' HazCom program failed to convey to Ruth the Material Data Safety Sheets, warnings, and other safety information the defendants had given to Ingalls; and (2) Ingalls failed to ensure Ruth's working spaces had a sufficient air flow to properly exhaust welding fumes, even though the defendants allegedly had warned Ingalls that "adequate ventilation" was required to maintain worker safety.

With docket no. 115, Ruth adds that, under Mississippi law, a jury is precluded from allocating any fault to Ingalls Shipyard, because Ingalls is statutorily immune. Accordingly, Ruth seeks a ruling that, regardless of whether *evidence may be admitted* that Ingalls shared some fault in causing him injury, Ingalls may not actually be *allocated any fault*, so Ingalls should not be included in a verdict form apportioning liability.

The Court has already issued a written opinion addressing the extent to which it will admit at trial evidence regarding Ingalls Shipyard's efforts to convey safety information to its workers, and

---

[4] Even though this Order documents rulings issued earlier, and even though the *Ruth* case has now settled, for ease of reading the Court phrases this Order in the present tense instead of the past tense, and as if the *Ruth* case was still going to trial.

the working conditions Ruth experienced; generally, this evidence is admissible. *See* docket no. 183 at 18-20 (noting the relevance of "[t]estimony regarding HazCom requirements, and Ingalls' efforts to comply therewith").[5]

The Court has not, however, issued a written opinion regarding whether it will permit a jury to allocate fault to Ingalls on a verdict form. As explained below, the Court concludes it will not permit a jury to allocate fault to Ingalls. This conclusion rests on the Court's understanding of the interplay between: (1) the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. §§901 *et seq.*; and (2) what can only be described as confusing Mississippi law.

## II.

### A. LHWCA.

The Court's analysis begins with a brief overview of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). LHWCA is essentially a federal worker's compensation statute which awards benefits to, among others, persons who are injured while helping to build large ships on or near federal navigable waters. *See Stewart v. Dutra Constr. Co.*, 125 S.Ct. 1118, 1123 (2005) (LHWCA "provides scheduled compensation to land-based maritime workers"); *Norfolk Shipbuilding & Drydock Corp. v. Garris,* 532 U.S. 811, 818 (2001) (LHWCA "provides nonseaman maritime workers . . . with no-fault workers' compensation claims"); 33 U.S.C. §903

[5] *See also* hearing tr. at 134-36 (Aug. 8, 2005) (concluding that, because evidence of Ingalls' HazCom program and Ingalls' efforts to comply with safety directives given to it by the defendants is relevant to the learned intermediary defense, an argument that the same evidence is irrelevant in the context of allocating fault is moot: "The evidence is relevant in any event on the learned intermediary claim and learned intermediary doctrine, so I don't see that it would do much good to grant a motion in limine on this [fault-allocation] ground and then simply allow the evidence in, in any event.").

("compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)."). There is no question that LHWCA applies to plaintiff Ruth, who has applied for and receives LHWCA benefits through Ingalls Shipyard.

LHWCA provides that a person who receives LHWCA benefits cannot sue his employer for damages related to his on-the-job injury. *See* 33 U.S.C. §905(a) ("[t]he liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee . . . ."); *id.* at 933(i) ("[t]he right to compensation or benefits under this chapter shall be the exclusive remedy to an employee when he is injured . . . by the negligence or wrong of any other person or persons in the same employ: Provided, That this provision shall not affect the liability of a person other than an officer or employee of the employer."). As with most worker's compensation statutes, the *guarantee* of benefits from the employer under LHWCA replaces the *possibility* of receiving from the employer damages under state law.[6]

Although an injured employee who receives LHWCA benefits cannot sue his employer for damages related to his injury, LHWCA further provides that the employee can still sue a third party

---

[6] *See Garris*, 532 U.S. at 818 ("as to [employers], LHWCA expressly pre-empts all other claims"); *Mack Trucks, Inc. v. Tackett*, 841 So.2d 1107, 1115 (Miss. 2003) (the "right of recovery under workers' compensation law is specifically intended to replace the previously-existing common law right of recovery against the employer in tort") (quoting *Accu-Fab & Constr., Inc. v. Ladner*, 2000 WL 274291 at *12 (Miss. Ct. App. Mar. 14, 2000) (McMillin, C.J., dissenting)); *Gordon v. N. Vaughan and Sons, Inc.*, 1998 WL 401688 at *2 (E.D. Pa. June 30, 1998) ("a workers' compensation claim is an employee's exclusive remedy for job-related injuries and thus replaces any tort action the employee might have had against the employer").

that contributed to his injury. *See generally id.* at §933 (titled "Compensation for injuries where third persons are liable"). Thus, for example, a shipfitter working at Ingalls Shipyard who collects LHWCA benefits, based on having contracted asbestosis while working: (1) may not bring an action against Ingalls for his asbestosis injuries; but (2) may still bring claims against third-party manufacturers who supplied the asbestos-containing products to Ingalls. *See Ingalls Shipbuilding, Inc. v. Director, Office of Workers' Compensation Programs, Dept. of Labor*, 519 U.S. 248, 251-52 (1997) (describing this fact pattern).

Given that an employee who is a LHWCA benefits-recipient may sue a third party for damages, but may not sue his own employer, a question arises regarding attribution of fault at trial. Specifically: when the employee sues this third party under state law, should any verdict against the third party be reduced by the amount of fault attributable to the immune employer? The parties in this case agree that the answer depends on Mississippi law. Ruth, however, argues that any verdict against the defendants in this case should not be reduced by the amount of fault attributable to Ingalls (if any), while defendants insist it must be so reduced. To resolve this dispute, the Court looks to a trio of cases known as *Fontenot*, *Accu-Fab*, and *Mack Trucks*.[7]

**B. *Fontenot.***

In *Fontenot*, the Fifth Circuit Court of Appeals examined the interplay between LHWCA and state law. Although *Fontenot* presents a complicated and rigorous analysis of the third party provisions contained in LHWCA, the rule that *Fontenot* ultimately derives is simple: allocation of

---

[7] *Fontenot v. Dual Drilling Co.*, 179 F.3d 969 (5th Cir. 1999), *cert. denied*, 528 U.S. 1062 (1999); *Accu-Fab & Construction, Inc. v. Ladner*, 778 So.2d 766 (Miss. 2001); *Mack Trucks, Inc. v. Tackett*, 841 So.2d 1107 (Miss. 2003).

fault to a third party tortfeasor depends on what sort of entity the third party is. The critical question is "whether the third party against whom liability is sought is a vessel or is a non-maritime entity." *Fontenot*, 179 F.3d at 974. If the third party is a "vessel," as that term is defined by LHWCA,[8] then LHWCA, itself, provides that the employee may bring a "third-party cause of action against [the] vessel based on negligence." *Id.* at 975. In such a case, "the employer *shall not* be liable to the vessel for such damages directly or indirectly." *Id.* at 974 (quoting 33 U.S.C. §905(b) (emphasis added)). In other words, when the third party sued by the employee is a "vessel," LHWCA provides explicitly that the trial court should *not* assess the fault of the employer, nor reduce a verdict against the third-party-vessel by the amount of the employer's fault.

If, on the other hand, the third party defendant against whom the employee brings suit is a "non-maritime entity" – meaning anything other than a "vessel" – then LHWCA is silent on the question of allocation of fault. The Fifth Circuit Court of Appeals observed that, given LHWCA's silence, the employee's claim against a non-maritime entity necessarily depends on state law. *Id.* at 976.[9] Since this third-party claim is premised upon state law, state law must also decide whether the court should assess the fault of the employer and reduce any verdict against the third party accordingly. *See id.* at 977 ("[n]o vessel is involved in this case, thus the LHWCA third-party fault

---

[8] LHWCA defines "the term 'vessel'" as "any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member." 33 U.S.C. §902(21).

[9] *See Fontenot*, 179 F.3d at 976 ("Section 933 establishes procedures by which third-party claims are to be prosecuted in the context of a predicate LHWCA claim. Any such third-party claim, unless it is a §905(b) or (c) claim against a vessel, must be based on some external authority. * * * In this case, because the third party tortfeasor was not a vessel, the external authority is the statutory law of the State of Louisiana.").

scheme is inapplicable, and we are left with Louisiana law").

In sum: if an employee who has received LHWCA benefits brings a claim for damages against a third-party tort-feasor, then the Court should treat the subjects of allocation of fault and proportionate liability as shown in the following chart.

| **Is the Third Party Defendant a "Vessel"?** | **Should the Court Allocate Employer Fault?** |
|---|---|
| Yes. | No. |
| No. | It depends on the applicable state law. |

Because the defendants in this case are not vessels, the question of whether the Court should allocate fault to Ingalls Shipyard depends on the law of Mississippi, which applies to Ruth's claims.

**C. *Accu-Fab*.**

In 2001, the Mississippi Supreme Court addressed directly the question raised by Ruth's instant motion in limine. In *Accu-Fab*, an employee named Ladner was working on a casino construction project in Biloxi, Mississippi, when he fell through a hole in the roof and died. "Because the casino was being constructed on a barge that was on a navigable waterway, Ladner was covered under [LHWCA]," and he received LHWCA benefits through his employer, the Bracken Construction Company. *Accu-Fab*, 778 So.2d at 768.[10] Although LHWCA precluded Ladner from suing Bracken, Ladner was not precluded from suing other, third parties for his injuries, so he did – he sued the casino project's general contractor ("Anderson") and also a stairwell sub-contractor ("Accu-Fab").

[10] It was "Ladner's heirs" who received the LHWCA benefits and who brought suit, but the Court refers to the plaintiff simply as "Ladner," for ease of reference.

At trial, Anderson and Accu-Fab "sought through jury instructions to have Bracken included in the apportionment of liability, pursuant to Miss. Code. Ann. §85-5-7 (1999)." *Id.* The trial court denied the request and the jury's $2 million verdict was apportioned to Anderson (70%), Accu-Fab (25%), and Ladner, himself (5%); none of the verdict was apportioned to Bracken.[11]

On appeal, the Mississippi Supreme Court affirmed. Unfortunately, however, the Mississippi Supreme Court did not make any mention of *Fontenot* or the rule it derives.[12]

As noted above, *Fontenot* holds that, in a case where the third party defendant is not a vessel, the question of whether a trial court should allocate fault to the employer is decided by state law. It is clear that neither Anderson nor Accu-Fab were vessels.[13] As was appropriate, then, Anderson

---

[11] Of course, while *apportionment* of liability to Bracken would not have led to *actual* liability of Bracken, it would likely have led to a decrease in any actual liability of Anderson and Accu-Fab. In addition, the total amount Ladner would receive would be lower, because Bracken would remain immune from liability, even though the jury had apportioned to it some measure of fault. The chart below shows how a theoretical 10% apportionment of liability to Bracken might have changed the jury's division, and Ladner's receipt, of the $2 million verdict.

| **Actual Verdict –<br>Bracken *Not* on Verdict Form** | **Theoretical Verdict –<br>Bracken on Verdict Form** |
|---|---|
| Anderson (75%) ($1,500,000)<br>Accu-Fab (20%) ($400,000)<br>Ladner (5%) ($100,000)<br>Bracken (0%) ($0) | Anderson (70%) ($1,400,000)<br>Accu-Fab (15%) ($300,000)<br>Ladner (5%) ($100,000)<br>Bracken (10%) ($100,000) |
| Amount Ladner receives: $1,900,000 | Amount Ladner receives: $1,700,000 |

[12] Although the Fifth Circuit Court of Appeals encompasses Mississippi, and *Fontenot* pre-dates *Accu-Fab*, the *Accu-Fab* court did not cite *Fontenot*.

[13] Indeed, even the casino project, itself, was not considered a "vessel" under LHWCA. *See Pavone v. Mississippi Riverboat Amusement Corp.*, 52 F.3d 560, 570 (5th Cir. 1995) (an "indefinitely moored, shore-side, floating casino[]" is "not . . . a vessel for purposes of the Jones Act or the general maritime law"); *King v. Grand Casinos of Mississippi, Inc. – Gulfport*, 697 So.2d 439 (Miss. 1997) (same).

and Accu-Fab relied upon Mississippi state law on appeal, "argu[ing] that pursuant to *Estate of Hunter v. General Motors Corp.*, 729 So.2d 1264 (Miss. 1999), the jury should have been allowed to apportion fault to Bracken." *Accu-Fab*, 778 So.2d at 769. The holding in *Estate of Hunter* had been that, "pursuant to Miss. Code. Ann. §85-5-7, the jury should be allowed to apportion fault to a settling defendant who is no longer a party to the case." *Id.* Anderson and Accu-Fab insisted that, just as a "settling defendant" should be apportioned fault under Mississippi law, so should an immune defendant, like Bracken.

The Mississippi Supreme Court, however, made the mistake of referring back to LHWCA and federal law for resolution of the argument, rather than examining Mississippi state law. In particular, the *Accu-Fab* court held that "*Estate of Hunter* . . . does not apply in the present case" because "Ladner was covered under [LHWCA] and therefore federal maritime standards govern." *Id.* at 769-70. This conclusion was incorrect, because the third party defendants whom Ladner was suing were not "vessels." The *Accu-Fab* court then examined *Edmonds v. Compagnie Generale Transatlantique*, 443 U.S. 256 (1979), which was a case where an employee covered by LHWCA had sued a *vessel*. The *Edmonds* court applied the rule, applicable when an employee sues a *vessel*, that the trial court should *not* allocate fault to the employer. The *Accu-Fab* court, missing the vessel / non-vessel distinction, found "*Edmonds* to be controlling," *Accu-Fab*, 778 So.2d at 770, and applied the "vessel rule" to non-vessels Anderson and Accu-Fab. Thus, the court affirmed non-allocation of fault to Bracken.

Importantly, the *Accu-Fab* court went on to state, in dicta, that it "would reach the same conclusion even if [LHWCA] was not implicated." *Id.* Citing with approval, *inter alia*, a law review article by Jonathan Cardi, the *Accu-Fab* court "agree[d] with the foregoing authorit[y] that

exclusion of the immune party from the apportionment process is the best approach." *Id.* at 771. While this statement was not a complete reversal of *Estate of Hunter* – which had held that fault *should* be apportioned to settling parties (and, by implication, to immune parties) – it was certainly somewhat inconsistent. As noted below, the Mississippi Supreme Court revisited this dicta in *Mack Trucks*, two years later.

Ultimately, *Accu-Fab* used what appears to be a somewhat circular analysis.[14] Rather than allowing state law to determine the propriety of apportionment of fault to an employer, when an employee covered by LHWCA sues a non-vessel third party, the *Accu-Fab* court assumed that "federal maritime standards govern," and that those standards always require the employer to be immune from apportionment. Essentially, the *Accu-Fab* court assumed that, if LHWCA benefits are paid, a vessel *must* be involved, so the trial court should not assess the fault of the employer and should not reduce an award accordingly.

Regardless of the reasoning used, however, the final holding of *Accu-Fab* is clear: in Mississippi, when an employee covered by LHWCA sues a third party for damages, the trial court does not apportion fault to the employer.

---

[14] The undersigned does not mean to disparage the *Accu-Fab* court; however, it is impossible to reconcile *Accu-Fab*'s reasoning with *Fontenot*, if the latter is correct in its conclusion that LHWCA draws a distinction between vessel and non-vessel third-party defendants when determining allocation of fault. *Fontenot*, itself, recognizes that the existence of this distinction is not at all intuitive, going to some length to show other circumstances that support it. *See Fontenot*, 179 F.3d at 974-76 (stating that the "distinction as to whether the third party against whom liability is sought is a vessel or is a non-maritime entity is not mere semantics," and reciting other cases where the distinction makes a difference). Because this Court finds *Fontenot* persuasive, and because the defendants have not provided any case law calling *Fontenot* into question, the Court is compelled to conclude that the *Accu-Fab* court missed a step in its analysis.

**D. *Mack Trucks.***

Read strictly, *Accu-Fab* addressed only whether fault should be allocated to an employer when the employee is covered by LHWCA. As noted, however, *Accu-Fab* contained dicta calling into question, more generally, the continued validity of the rule, announced in *Estate of Hunter*, that a jury applying Mississippi law should apportion fault to parties who settled before trial. By implication, the same dicta suggested that fault should not be apportioned to parties who are immune from liability, either. In *Mack Trucks*, the Mississippi Supreme Court explained that this was not the case.

The facts of *Mack Trucks* are as follows. Murphree, who was an employee of Wilburn Oil, was unloading fuel from two tanker trucks simultaneously, using two hoses and a "T" connector. This procedure was "[c]ontrary to company policy." *Mack Trucks*, 841 So.2d at 1110. One of the tanker trucks was manufactured by Mack Trucks, and had a Mack engine; the other tanker was manufactured by Freightliner, and had a Cummins engine. During the unloading process, an explosion occurred, killing Murphree. Murphree's heir, plaintiff Tackett, received Mississippi worker's compensation benefits through Murphree's employer, Wilburn Oil. Under Mississippi law, Wilburn Oil was immune from further liability. *See id.* at 1112 (referring to Wilburn Oil's "immunity under our workers' compensation law").

Tackett sued Mack Trucks, Freightliner, and Cummins in state court, asserting they had contributed to Murphree's death because defects in one or both of the tanker truck engines caused the explosion. Even though Wilburn Oil was immune from liability, the trial court asked the jury to determine Wilburn Oil's portion of fault. The jury found for Tackett, assessed total damages of $1.8 million, and allocated 39% of the fault to Wilburn Oil. The trial court, however, apparently in

reliance on the dicta in *Accu-Fab*, "re-allocated the jury's assessment against Wilburn Oil to the [other] defendants." *Id.* at 1113.

On appeal, the Mississippi Supreme Court disagreed with the argument that "Wilburn Oil should never have been included in the allocation of fault and, therefore, that the trial court properly re-allocated the jury's assessment against Wilburn Oil to the defendants." *Id.* To the contrary, the court made clear that *Accu-Fab* had not overruled *Estate of Hunter*, and that a jury *should* allocate fault not only to "settling defendants," but also to immune parties. *See id.* at 1114 ("[t]here is nothing logically or legally inconsistent about allocating fault but shielding immune parties from liability for that fault").

Acknowledging that this reaffirmation of *Estate of Hunter* raised questions about its earlier dicta in *Accu-Fab*, the *Mack Trucks* court conceded that its reliance on the Cardi law review article in *Accu-Fab* "ha[d] been rightly criticized." *See id.* at 1114-15 (noting that "Cardi's article specifically excluded worker's compensation immunity from its analysis"). Accordingly, the Mississippi Supreme Court declared that, "[t]o the extent that *Accu-Fab* may be construed as stating that immune parties may not be assessed fault (as opposed to liability) under §85-5-7, . . . that opinion is overruled." *Mack Trucks*, 841 So.2d at 1115.

If the *Mack Trucks* opinion had stopped there, this Court would probably agree with defendants that, under Mississippi law, the jury in this case should allocate fault to Ruth's employer, Ingalls Shipyard. After all, *Mack Trucks* makes quite clear that – at least when LHWCA is not involved – a jury applying Mississippi law should allocate fault to immune employers. But immediately after its statement that the *Accu-Fab* opinion was incorrect, the *Mack Trucks* court added the following avouchment:

> The holding in *Accu-Fab* was predicated on the controlling precedents of federal case law, since Ladner was a beneficiary under [LHWCA]. *Accu-Fab*, 778 So.2d at 769-70. ***Estate of Hunter* was therefore not applicable**; nevertheless, we went on to state: "Furthermore, we would reach the same conclusion even if [LHWCA] was not implicated." *Id.* at 770. Thus, the remarks about *Estate of Hunter* were dicta, and **the present opinion does not impugn the correctness of the holding in *Accu-Fab*.**

*Mack Trucks*, 8741 So.2d at 1115 n.2 (emphasis added).

The language emphasized in bold above can be understood in only one way – as a reaffirmation of the Mississippi Court's earlier, arguably faulty analysis of whether a jury should allocate fault to an employer when the employee received LHWCA benefits. As discussed above, the *Accu-Fab* court concluded that a jury should not apportion fault to an employer when the employee receives LHWCA benefits, even if the third-party defendant is not a "vessel." The *Mack Trucks* opinion states that, regardless of the rules otherwise declared therein, if the employee is "a beneficiary under [LHWCA]," then the case lies outside the ambit of *Mack Trucks*; instead, *Accu-Fab* still controls. While *Mack Trucks* clarified the question of allocation of fault to an immune employer in Mississippi in most circumstances, it explicitly left uncorrected the reasoning and result contained in *Accu-Fab*.

This Court cannot correct the Mississippi Supreme Court's reasoning by fiat, nor ignore its reaffirmation in *Mack Trucks* of *Accu-Fab's* result. Even though *Accu-Fab* appears to be premised upon an overly broad understanding of LHWCA, the current state of Mississippi law holds that, when an employee covered by LHWCA sues a third party for damages, the trial court does *not* apportion fault to the employer.

**III.**

This Court is persuaded that the vessel / non-vessel distinction discussed in *Fontenot* is valid. As such, the Court must look to Mississippi state law to determine whether it should direct a jury to allocate fault to Ruth's immune employer, Ingalls Shipyard, when the jury weighs Ruth's claims against the non-vessel defendants.

The Mississippi Supreme Court has twice affirmed that, if the employee has received LHWCA benefits, courts applying Mississippi law must follow the rule that a jury should not allocate fault to the employer.[15] This Court, when applying Mississippi law, must follow this rule as well.

In this case, Ruth has received LHWCA benefits. Accordingly, Ruth's motion to preclude allocation of fault to Ingalls Shipyard must be granted.

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**DATED**:
February 27, 2006

15 This Court also cannot merely assume that the Mississippi Supreme Court would treat LHWCA-benefit cases differently if it were to revisit the issue again and take *Fontenot* into account. It is possible, for example, that *Accu-Fab* and *Mack Trucks* represent a policy choice by the Mississippi Supreme Court based on a view that injuries occurring on or involving navigable waterways merit unique treatment, or that LHWCA benefits are somehow inadequate to properly compensate its citizens for such injuries (thereby justifying the non-apportionment rule in that context). Under *Fontenot*, such a state law policy choice would govern the result in this non-vessel case. Unless and until the Mississippi Supreme Court does, in fact, revisit this issue, this Court will apply the above analysis in all similar Mississippi cases.